**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
                                                        )    Case No.
                                                        )
In re Application of:                            )
                                                        )
 JOHN MALKOVICH                          )
                                                        )
                        *Petitioner*,            )
                                                        )
for an Order Pursuant to 28 U.S.C. § 1782  )
to Conduct Discovery for Use in           )
a Foreign Proceeding                         )
                                                        )
———————————————————————— )


**MEMORANDUM OF LAW IN SUPPORT**
**OF APPLICATION FOR AN ORDER**
**PURSUANT TO 28 U.S.C. § 1782**


HARRIS, O'BRIEN, ST. LAURENT &
CHAUDHRY LLP
L. Reid Skibell
Alexander Sakin
111 Broadway, Suite 1502
New York, NY 10006
(212) 397-3370

*Attorneys for John Malkovich*

## TABLE OF CONTENTS

THE PARTIES.................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 1

ARGUMENT ..................................................................................................................... 7

    I.    Malkovich Satisfies the Statutory Factors Governing Discovery Under
         28 U.S.C. § 1782 ..................................................................................................... 7

    II.   Malkovich Satisfies the Discretionary Factors Governing Discovery  Under
         28 U.S.C. § 1782 ..................................................................................................... 8

        A.   Evidence Held by CBS is Unobtainable Absent 28 U.S.C. § 1782 Aid ................. 9

        B.   No Showing Can Be Made that the *Tribunal Correctionnel de Paris* Would Reject
             Evidence from CBS .............................................................................................. 10

        C.   The Applicant is Not Attempting to Circumvent French or U.S. Policies ............. 11

        D.   The Discovery Sought is Not Intrusive or Burdensome ......................................... 14

    III.  An *Ex Parte Application* is Appropriate .................................................................... 14

CONCLUSION................................................................................................................. 15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aequitron Medical, Inc. v. CBS, Inc.*,
   1995 WL 406157 (S.D.N.Y. July 10, 1995) ........................................................ 13

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011) ................................................................. 8

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ..................................................................... 7, 11, 12

*Chevron Corp. v. Berlinger*,
   629 F.3d 297, (2d Cir. 2011) ............................................................................. 12

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) .............................................................................. 10

*In re Application of Auto-Guadeloupe Investissement S.A.*,
   2012 WL 4841945 (S.D.N.Y. Oct. 20, 2012) ........................................... 8, 10, 11

*In re Application of Esses*,
   101 F.3d 873 (2d Cir. 1996) .............................................................................. 14

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
   2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................ 8, 11

*In re Application of Gorsoan Ltd.*,
   2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ................................................... 10

*In re Application of Operacion y Supervision de Hoteles*,
   *S.A. de C.V.*, 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015) ................................. 7, 9, 10

*In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie Nationale*,
   2013 WL 5517925 (D. Conn. Oct. 2, 2013) ........................................................ 9

*In re Gushlak*,
   2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) .................................................... 14

*In re Metallgesellschaft AG.*,
   121 F.3d 77 (2d Cir. 1997) ................................................................................ 11

*In re O'Keeffe,*
    2015 WL 540238 (D.N.J. Feb. 10, 2015)................................................................. 12

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    52 U.S. 241 (2004) ........................................................................................... passim

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus,*
    2014 WL 6765684 (S.D.N.Y. Dec. 1, 2014)............................................................ 9

*NLRB v. Mortensen,*
    701 F. Supp. 244 (D.D.C. 1988) ........................................................................... 13

*SEC v. Seahawk Deep Ocean Tech.,*
    166 F.R.D. 268 (D. Conn. 1996)............................................................................ 13

*U.S. v. Markiewicz,*
    732 F.Supp. 316 (N.D.N.Y.1990) .......................................................................... 13

*U.S. v. Treacy,*
    603 F.Supp.2d 670 (S.D.N.Y.2009) ................................................................. 13, 14

*Ukrnafta v. Carpatsky Petroleum Corp.,*
    2009 WL 2877156 (D. Conn. Aug. 27, 2009)......................................................... 9

**Statutes**

28 U.S.C. § 1782............................................................................................. passim

Fed. R. Civ. P. 26(c) ........................................................................................... 14

Fed. R. Civ. P. 45(c)(3)........................................................................................ 14

Applicant John Malkovich submits this memorandum of law in support of his *ex parte* application seeking the issuance of a subpoena pursuant to 28 U.S.C. § 1782 directing CBS News, Inc. ("CBS") to provide a representative to give deposition testimony for use in two related criminal proceedings currently pending in the *Tribunal Correctionnel de Paris*, the Criminal Court of Paris, France (collectively, the "Paris Action").

## THE PARTIES

Applicant John Malkovich ("Malkovich" or "Applicant") is an individual residing in the State of Massachusetts and is a well-known actor, director, producer, and fashion designer. CBS is a corporation organized and existing under the laws of the State of Delaware with its headquarters in New York, New York. Ira Rosen, the likely deponent, is an employee of CBS in New York and is a producer for one of its shows, *60 Minutes*.

## FACTUAL BACKGROUND

This application seeks narrowly tailored testimony for use in actions commenced by Malkovich against the corporate parent of the prominent French daily *Le Monde*, its editor, and two journalists (the "Le Monde Defendants"). In that action, Malkovich asserts claims for defamation stemming from three *Le Monde* articles, published both in its print daily and on its website, falsely implicating him as a participant in an alleged international tax evasion scheme relating to accounts held with HSBC Private Bank ("HSBC"), a Swiss subsidiary of the British banking conglomerate.

*Le Monde* has dubbed its investigation into this scheme "SwissLeaks". In connection with the investigation, *60 Minutes* took on the task of verifying information related to United States persons that supposedly had accounts with HSBC. As explained below and in his accompanying declaration, Malkovich never had an account with HSBC, he did not engage in

1

tax evasion, and, when directly asked by Rosen on behalf of CBS, he denied both allegations. Nevertheless, the Le Monde Defendants proceeded to impugn Malkovich's reputation by falsely labeling him a tax cheat.  The defamatory statements were picked up by other media outlets, thereby exacerbating the damage to his reputation.

In the Paris Action, the Le Monde Defendants will have an opportunity to defend their misconduct by contending that they acted in good faith in publishing false statements about Malkovich.  The discovery requested in this 28 U.S.C. § 1782 application is necessary for challenging such a contention, because it will confirm whether or not the information Malkovich provided to CBS was, in turn, conveyed to the Le Monde Defendants.  (May 20, 2015 Declaration of L. Reid Skibell ("Skibell Decl."), Ex. 2 (proposed subpoena).)

**The Defamatory *Le Monde* Articles**

The subject of the Paris Action is a series of allegedly defamatory articles published on February 8 and 10, 2015, all authored by *Le Monde* journalists.  (May 20, 2015 Declaration of John Malkovich ("Malkovich Decl."), ¶¶10-17.)  The first article appeared on February 8, 2015 on *Le Monde*'s website *Le Monde.fr* in substantially identical English and French versions and contains the principal defamatory statement at issue in the Paris Action.  (*Id.*, ¶10 & Exs. 1-2.) Two other articles appeared on February 10, 2015 in French in the *Le Monde* print version, one of which contained the same defamatory statement as found in the original article (collectively, the "Articles").  (*Id.*, ¶16-17 & Exs. 4-5.)

The first article is entitled "SwissLeaks: the Backstory of a Worldwide Investigation," and it concerns a "spectacular and unprecedented" illegal tax evasion scheme allegedly engineered by HSBC on behalf of account holders worldwide.  The SwissLeaks story was based on banking data covering the years 2005 to 2007 that was leaked by Hervé Falciani, a former

HSBC employee.  As stated in the article, the leaked data "provided evidence of fraud on a gigantic scale," in which over 100,000 HSBC account holders are allegedly complicit, and which resulted in the investigation of HSBC by French authorities.  (*Id.*, Ex. 1.)

In the second paragraph, the Le Monde Defendants identify Malkovich as an HSBC account holder (along with two others), and claim that he should be embarrassed by his role in HSBC's tax evasion scheme:

> The publication of these figures is likely to prove embarrassing for a good number of celebrities, including the French comedian Gad Elmaleh, King Mohamed VI of Morocco and the American actor John Malkovich, but it will shake the international financial industry to the core.

(*Id.*, ¶12 & Ex. 1.)  This statement is repeated verbatim in another French-language piece, largely identical to the first article, which appeared in *Le Monde*'s print edition on February 10, 2015 and is entitled "HSBC The Kings of Evasion."  (*Id.*, ¶17 & Ex. 5.)  Similarly, on a Twitter posting to promote the first article, they proclaim:  "#SwissLeaks: from Gad Elmaleh to John Malkovich, many celebrities are embarrassed."  (*Id.*, ¶10 & Ex. 3.)

While no other account holders are identified by name, they are cast as a particularly disreputable bunch.  It describes them as including "celebrities" (*i.e.*, Malkovich), as well as "[a]rms traffickers, [] drug smugglers, funders of terrorist organizations . . . French surgeons wishing to launder undeclared fees" and "Al Qaeda funders," "most of them keen to hide their money in Switzerland" in a "perfectly illegal" fashion. (*Id.*, ¶13 & Ex. 1.)

A third French article also appeared in the February 10, 2015 print edition and is entitled "Actors, Athletes, Doctors, Lawyers, Heads of Corporations . . . the Swiss Accounts Reveal a Financial Strategy Carried Out by Highly Paid Professionals."  In a box appearing right after the article, entitled, in capital letters, "THE ELITE OF THE EVADERS," there is a statement in French indicating that "Malkovich said he had no knowledge of the account in Geneva that bears

3

his name." This manipulative presentation of Malkovich's statement (which he never gave to *Le Monde*) implies that Malkovich, aside from being a tax cheat, is untruthful – a purported member of a tax-evading "elite" with an account in Geneva bearing his name who persists in denying knowledge of such account.  (*Id.*, ¶16 & Ex. 4.)

In the original article, the Le Monde Defendants also trumpet the thoroughness of their investigatory process.  The article claims that they worked with a team of investigative journalists from around the world, including *60 Minutes*, to analyze the HSBC data Falciani gave to *Le Monde*.  (*Id.*, ¶11 & Ex. 1.)  This collaboration was supposedly designed "to ensure that [the HSBC data] would be treated as completely and accurately as possible."  Further, the article maintains that prior to its publication the Le Monde Defendants and their collaborators "had to call up every single person mentioned in the articles, whether that person was in Paris or Bamako," which was presumably done to confirm the veracity of the information provided by Falciani.  (*Id.*, ¶15 & Ex. 1.)  In turn, one of the articles published on February 10, 2015 indicates that *Le Monde* directly contacted Malkovich and obtained his denial of knowledge of a Swiss account.  (*Id.*, ¶16 & Ex. 4.)

Nevertheless, no one from *Le Monde* contacted Malkovich prior to the publication of the Articles, and the information that appears in them about Malkovich is false.  (*Id.*, ¶15.) Malkovich has never had an account with HSBC, much less sought to use such an account to avoid the payment of income taxes.  Malkovich's only connection to HSBC, if it can even be called that, is that he maintained an account with Republic National Bank of New York (Suisse) S.A. ("Republic National") between 1996 and 1999.  There was nothing secret about this account, which was in his own name and used his business manager's address, and he dutifully paid any taxes associated with it.  (*Id.,* ¶4.)  Malkovich closed the Republic National account on

4

December 12, 1999, transferring the entire balance to an account he had with Chase Manhattan

Bank in New York.  HSBC purchased Republic National Bank on December 31, 1999, which is

approximately two and a half weeks after the account was closed.  (*Id.*, ¶5.)

**The Role of CBS**

CBS's newsmagazine *60 Minutes* played a key role in the SwissLeaks investigation and

carried a segment on the scandal.  According to the *60 Minutes* piece, CBS agreed to investigate

the U.S. names contained in the HSBC data and share the results with *Le Monde* and other media

groups working with the French newspaper.  (*Id.* ¶¶18-19 & Ex. 6.)

On or about October 23, 2014, Rosen contacted one of Malkovich's representatives

through a press agent.  Over the next few days, there were follow-up communications between

Malkovich and his representatives, on the one hand, and Rosen and the press agent, on the other

hand.  (*Id.*, ¶7.)  Malkovich and Rosen also spoke by telephone on a few occasions during this

period.  In the course of these communications, Rosen inquired as to whether Malkovich had two

bank accounts with HSBC, which he represented were included in the data leaked by Falciani.

In response, Malkovich explained to Rosen that he does not have, and has never had, an account

at HSBC – let alone participated in an HSBC-orchestrated tax avoidance scheme.  He speculated

that his name may have somehow appeared in HSBC's records as a result of his investments with

the convicted fraudster, Bernard Madoff.  (*Id.*, ¶8.)  Based on this information, Rosen told

Malkovich that *60 Minutes* would not mention him in its SwissLeaks segment.  (*Id.*, ¶9.)

Subsequently, on the same day the first *Le Monde* article was published, *60 Minutes* ran

its piece on SwissLeaks, which Rosen helped to produce.  True to Rosen's representation, *60

Minutes* did not identify Malkovich as a holder of a HSBC account in the story.  (*Id.*, ¶18.)

**The Paris Action and the Requested Testimony**

On April 30, 2015, Malkovich commenced two related proceedings in the *Tribunal Correctionnel de Paris*. Malkovich alleges the Le Monde Defendants engaged in defamation that was effectuated in bad faith and he seeks, among other relief, joint damages in the amount of €300,000. (May 19, 2015 Declaration of Hervé Temime ("Temime Decl."), ¶6 & Exs. 1-2.) The Le Monde Defendants have taken the position that the statements in the Articles about Malkovich are not false, and as proof they have submitted a piece of the HSBC data and certain deposition testimony about the data. The data they provided to the *Tribunal Correctionnel de Paris*, however, shows that the account in question was closed prior to HSBC's acquisition of Republic National. (*Id.*, ¶8.)

The proceeding will also have a second stage. At that point, the Le Monde Defendants can present evidence to demonstrate they acted in good faith. Under French law, bad faith is presumed in a defamation action, but that presumption can be overcome with a showing of, among other things, the extent of defendant's investigation into the plausibility of the relevant statements. (*Id.*, ¶9.)

CBS's communications with the Le Monde Defendants are significant for the Paris Action, as they directly relate to Malkovich's claim that the Le Monde Defendants defamed him in bad faith. (*Id.*, ¶11.) CBS presumably reported the substance of Rosen's communications with Malkovich to *Le Monde* prior to the publication of the Articles, because the Le Monde Defendants were relying on CBS to investigate U.S. names included in the HSBC data. As a result, the Le Monde Defendants may have published the Articles with full knowledge of Malkovich's denial of any connection to HSBC. Such information, which could be obtained in a short deposition, would be relevant to proving the Le Monde Defendants' bad faith. (*Id.*)

6

Accordingly, Malkovich seeks to depose a representative of CBS on two narrow issues: (1) to

confirm the content of the information that Malkovich provided to Rosen on behalf of CBS; and

(2) to determine if CBS subsequently conveyed that information to the Le Monde Defendants.

ARGUMENT

I.  **Malkovich Satisfies the Statutory Factors Governing Discovery Under 28 U.S.C. § 1782**

28 U.S.C. § 1782 was enacted to provide a procedure by which parties such as Applicant

could obtain "federal court assistance in gathering evidence for use in foreign tribunals." *Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 52 U.S. 241, 247 (2004). It authorizes a district court to

grant an application for discovery for use in a foreign proceeding where: (1) the person from

whom discovery is sought resides (or is found) in the district of the court to which the

application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal;

and (3) the application is made by a foreign or international tribunal or any interested person.

*See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (setting

forth the statutory standard). Once the "statutory requirements are met, a district court is free to

grant discovery in its discretion." *Id.* Here, Malkovich easily satisfies the three statutory factors.

First, CBS is headquartered in this district and Rosen works in this district. (Skibell

Decl., ¶4 & Ex. 1.) Second, the discovery sought is for use as evidence in the Paris Action,

pending before the *Tribunal Correctionnel de Paris*, a trial-level court that is part of the judiciary

of France and capable of rendering a decision on the merits leading to a final resolution of the

dispute. (Temime Decl., ¶7.) As such, the *Tribunal Correctionnel de Paris* qualifies as a

"foreign tribunal" for purposes of 28 U.S.C. § 1782. *See, e.g., In re Application of Operacion y*

*Supervision de Hoteles, S.A. de C.V.*, 2015 WL 82007, at *5 (S.D.N.Y. Jan. 6, 2015) (Mexico

City federal court was a foreign tribunal under 28 U.S.C. § 1782); *In re Application of Auto-*

7

*Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 20, 2012) (Pointe–a–Pitre Commercial Court of Guadeloupe, France qualified as a foreign tribunal).

Third, Malkovich, a litigant in a foreign litigation, is precisely the type of person for whom Section 1782 was enacted and is an "interested person" under the statute. *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782.") (internal citation omitted); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (finding that litigant in foreign proceeding was an "interested person").

## II.     Malkovich Satisfies the Discretionary Factors Governing Discovery Under 28 U.S.C. § 1782

Because Malkovich has satisfied the 28 U.S.C. § 1782 factors, the Court has the discretion to grant his application.  In considering whether to exercise that discretion, courts typically examine the factors elucidated by the Supreme Court in *Intel*, all of which Malkovich satisfies under the circumstances at issue: (1) whether or not the person from whom discovery is sought is a participant in the foreign proceeding; (2) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States"; and (4) whether the discovery requests are "unduly intrusive or burdensome."  *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004)).

8

A.    **Evidence Held by CBS is Unobtainable Absent 28 U.S.C. § 1782 Aid**

Where the person or entity from whom discovery is sought is not a participant in the

foreign proceeding, courts typically grant applications for discovery pursuant to Section 1782.

That is because, as held by the Supreme Court, "nonparticipants in the foreign proceeding may

be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the

United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264; *see also*

*Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 WL 2877156, at *5 (D. Conn. Aug. 27, 2009)

(finding the first *Intel* factor satisfied where discovery was sought from an entity that was "not a

participant, nor [was] it expected to be a participant, of the [foreign] arbitration proceedings [] so

Section 1782 relief is necessary . . . to obtain discovery from [the non-participant entity]."); *La*

*Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 2014 WL 6765684, at *3 (S.D.N.Y. Dec. 1,

2014) (same); *In re Consellior SAS, Kerfraval, Ass'n De Documentation Pour L'industrie*

*Nationale*, 2013 WL 5517925, at *2 (D. Conn. Oct. 2, 2013) (granting application for discovery

pursuant to Section 1782, noting that "Respondents are not parties to the action in France and

therefore, the French Court cannot order them to produce discovery.").

Here, CBS is not a participant in the Paris Action, and its testimony will be unobtainable

without the relief sought.  Indeed, under French law, the *Tribunal Correctionnel de Paris* before

which the Paris Action is pending, would have no authority to order the testimony of CBS or

Rosen, if they would not willingly agree to testify.  (Temime Decl., ¶12.)  In and of itself, the

unavailability of the requested deposition testimony is sufficient to satisfy the first *Intel* factor.

*See In re Application of Operacion y Supervision de Hoteles*, 2015 WL 82007, at *6 (S.D.N.Y.

Jan. 6, 2015) ("Because Ruffing is not a party to the Mexican Proceeding and the foreign tribunal

lacks jurisdiction to compel his testimony, analysis of the first *Intel* factor suggests that the

subpoena should be enforced.").

Further, there is no alternative mechanism by which Malkovich can obtain testimony on either his communications with CBS or CBS's communications with *Le Monde*. Under French law, a claimant in a criminal defamation action cannot testify under oath in support of his claims. The same is true for defendants in such an action. (Temime Decl., ¶12.) Accordingly, Malkovich will be unable to obtain testimony under oath concerning the content of these highly relevant communications without this Court granting the requested discovery. This too, supports satisfaction of the first *Intel* factor. *See In re Application of Gorsoan Ltd.*, 2014 WL 7232262, at *6-7 (S.D.N.Y. Dec. 10, 2014) (finding the first factor was met where the persons from whom discovery was requested were either not parties in the foreign proceeding or were unwilling to provide evidence); *In re Auto–Guadeloupe Investissement*, 2012 WL 4841945, at *6 ("[I]n light of the fact that the materials which AGI seeks would be unavailable but for § 1782 assistance, the first *Intel* factor weighs against quashing AGI's subpoena requesting discovery from Leucadia.").

**B.   No Showing Can Be Made that the *Tribunal Correctionnel de Paris* Would Reject Evidence from CBS**

With respect to the second *Intel* factor, courts place "the burden on the party opposing discovery to show that a foreign court would *not* be receptive to this assistance." *In re Application of Operacion y Supervision de Hoteles*, 2015 WL 82007, at *6 (emphasis in original). When analyzing the receptivity of a foreign court to United States judicial assistance, the Second Circuit has expressly held that courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). "Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in

providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Id.* (internal citation omitted). "Such authoritative proof has been found to exist where the representative of a foreign sovereign has expressly and clearly made its position known." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6.

No such "authoritative proof" is likely to be produced here. The *Tribunal Correctionnel de Paris* has not expressed any hostility to the use of CBS's testimony in the Paris Action and there is no reason to believe that it will. Further, any information gained in a deposition conducted under oath would be admissible in the Paris Action. (Temime Decl., ¶13.) Accordingly, Malkovich satisfies the second *Intel* factor.

### C.    The Applicant is Not Attempting to Circumvent French or U.S. Policies

Malkovich is not attempting to circumvent French proof-gathering limits or other policies of France or the United States. The requested evidence is admissible in France and will assist in prosecution of the Paris Action. It is irrelevant whether or not the discovery would be independently available under French law. *See In re Auto–Guadeloupe Investissement*, 2012 WL 4841945, at *6 (rejecting contention that requested evidence could not be obtained under French law); *see also In re Metallgesellschaft AG.*, 121 F.3d 77, 80 (2d Cir. 1997) ("[T]hrough § 1782 Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions, as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.").

Moreover, as the Second Circuit has explained, analysis of this factor does not involve the discoverability or admissibility of the evidence sought under foreign law. *See Brandi-Dohrn*,

11

673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.") (emphasis in the original); *In re O'Keeffe*, 2015 WL 540238, at *6 (D.N.J. Feb. 10, 2015) (with respect to the third *Intel* factor, "there is no requirement that an applicant show that the information would be discoverable in the foreign proceeding or that it would be admissible."). As with the second *Intel* factor, CBS can make no conceivable showing that Malkovich is somehow trying to circumvent French law or policy by seeking testimony in the United States that is of direct relevance to his pending defamation claims.

Nor is Malkovich attempting to circumvent U.S. limits on discovery, including the journalistic privilege doctrine. The purpose of this limited privilege is to "protect the public's interest in being informed by a vigorous, aggressive and independent press." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (emphasis omitted) (internal quotation marks omitted). This purpose is not substantively implicated here because the discovery he seeks is limited to confirming the content of the information he provided to CBS, through Rosen, and to substantiate whether or not that information was subsequently conveyed to the Le Monde Defendants before publication of the Articles. In other words, the discovery at issue is confined to what Malkovich voluntarily made available to CBS to assist in its investigation of a story and does not involve confidential information. Denying him this discovery would actually inhibit the news gathering process—rather than protect it—because it would deter public persons, such as Malkovich, from responding to reporter's questions, for fear that they would have no way to determine whether or not their responses are reported accurately.

Further, "courts in this and other circuits routinely permit journalists to testify at trial

where . . . they are called solely to confirm statements that were made in a published newspaper article." *U.S. v. Treacy*, 603 F.Supp.2d 670, 672 (S.D.N.Y.2009), *aff'd in relevant part,* 639 F.3d 32, 36 (2d Cir. 2011); *see also SEC v. Seahawk Deep Ocean Tech.*, 166 F.R.D. 268, 269 (D. Conn. 1996) (refusing to quash subpoena that had been issued "for only one purpose: to ask [the reporter] to verify that one of the defendants . . . in fact made the statements [the reporter] attributed to him in a published newspaper article"); *U.S. v. Markiewicz,* 732 F.Supp. 316, 319–21 (N.D.N.Y.1990) (denying motion to quash subpoena of reporters' testimony that defendants made statements reported in newspapers); *NLRB v. Mortensen,* 701 F. Supp. 244, 246 (D.D.C. 1988) (enforcing subpoenas that "required the journalists to appear and verify the fact that they had conducted and reported correctly the three interviews").

Those cases closely parallel the circumstances at issue.  Here, the original article suggests that the Le Monde Defendants engaged in a good-faith investigation of HSBC data by working with CBS and other news organizations to analyze the HSBC data, and that Le Monde Defendants confirmed the veracity of the information in the data before going to print by contacting persons identified as HSBC account holders, using their collaborators.  In its own news segment, CBS trumpeted the assistance it gave to *Le Monde* in carrying out the investigation of United States persons.  In effect, CBS functioned as the investigatory partner of the Le Monde Defendants, and Malkovich, who asserts in the Paris Action that the Le Monde Defendants published statements about him in bad faith, with knowledge of their falsity, is entitled to verify the truth of published statements made by the Le Monde Defendants and CBS about their purported investigatory processes as they relate to him. *See Aequitron Medical, Inc. v. CBS, Inc.*, 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995) (rejecting attempt by CBS to resist discovery in a defamation case on the grounds of reporter's privilege).

13

Malkovich is also pursuing this evidence through the least intrusive means available: simply asking a representative of CBS to testify to what Malkovich told Rosen and whether and when this information was conveyed to the Le Monde Defendants. *See, e.g.*, *Treacy*, 603 F.Supp.2d at 673 (permitting similarly limited questioning). Accordingly, Malkovich's application is sufficient to overcome any argument that the requested information is covered by privilege.

### D. The Discovery Sought is Not Intrusive or Burdensome

Finally, Malkovich's discovery request is in no way unduly intrusive or burdensome. As discussed above, it is narrowly tailored, concerns two issues, and amounts to the taking of a single, relatively brief deposition. Before bringing this motion he also attempted to ask Rosen to provide the requested information voluntarily through an affidavit, but Rosen was clear he had no interest in doing so. (Skibell Decl., ¶¶2-3.) Having rejected this alternative, CBS should not be permitted to claim that a deposition would be burdensome.

### III. An *Ex Parte Application* is Appropriate

The *ex parte* application procedure is permissible here, where Malkovich seeks the issuance of a subpoena under the Federal Rules of Civil Procedure. That is because in the event CBS chooses not to comply with the discovery request, it retains its rights to move to quash and/or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3), or to seek a protective order under Fed. R. Civ. P. 26(c). *See In re Application of Esses*, 101 F.3d 873, 874 (2d Cir. 1996) (upholding grant of *ex parte* application for judicial assistance); *In re Gushlak*, 2012 WL 1514824, at *6 n. 4 (E.D.N.Y. Apr. 30, 2012) (explaining that "courts routinely grant § 1782 applications *ex parte*").

14

## CONCLUSION

For all the foregoing reasons, the Applicant respectfully requests that the Court enter an

order, pursuant to 28 U.S.C. § 1782, granting him leave to conduct the requested discovery.

Dated:   New York, New York
         May 20, 2015

                                     HARRIS, O'BRIEN, ST. LAURENT &
                                     CHAUDHRY LLP


                                     _____
                                     L. Reid Skibell
                                     Alexander Sakin
                                     111 Broadway, Suite 1502
                                     New York, NY 10006
                                     (212) 397-3370

                                     *Attorneys for John Malkovich*